UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northwest Airlines, Inc.,

       Plaintiff,

v.                                                                                          Civ. No. 07-4803 (JNE/JJG)
                                                                                            ORDER

Stephen M. Filipas, Robert F.
Mokos, Thomas E. Niederer,
Raymond B. Phillips, Grant D.
Ranum, and Michael Tanksley,
Individually, and as Representatives
of Persons Similarly Situated,

       Defendants,

Air Line Pilots Association,

       Intervenor-Plaintiff.

---

Thomas W. Tinkham, Esq., and Stephen P. Lucke, Esq., Dorsey & Whitney LLP, appeared for Plaintiff Northwest Airlines, Inc.

Lawrence P. Schaefer, Esq., Schaefer Law Firm, LLC, appeared for Defendants Stephen M. Filipas, Robert F. Mokos, Thomas E. Niederer, Raymond B. Phillips, Grant D. Ranum, and Michael Tanksley, Individually, and as Representatives of Persons Similarly Situated.

Richard Seltzer, Esq., Cohen, Weiss and Simon LLP, and Marnie L. DeWall, Esq., Lindquist & Vennum PLLP, appeared for Intervenor-Plaintiff Air Line Pilots Association.

---

Northwest Airlines, Inc., (Northwest) brings this declaratory judgment action against a putative defendant class of pilots (Pilot Defendants) seeking a declaration that its recently-adopted pension plan complies with the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1054. (2000), and with the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (2000).  The case is before the Court on the Pilot Defendants' Motion to Stay and Motion to Transfer or Stay.  The Motion to Stay [Docket No. 24] is subsumed in the Motion to

1

Transfer or Stay [Docket No. 68] and will therefore be stricken  For the reasons set forth below, the Motion to Transfer or Stay is denied.

## I.        BACKGROUND

In Northwest's recently concluded bankruptcy reorganization, Northwest and the Air Line Pilots Association (ALPA) agreed to freeze the existing pilot benefit plan and replace it with a new "targeted" retirement benefit plan (Target Plan), to which Northwest would make a set contribution.  Under the Target Plan, longer-serving pilots receive a smaller allocation of the company contribution than pilots with fewer years of service because longer-serving pilots have accrued more retirement benefits under the now frozen old plan and pilots with fewer years of service could no longer earn benefits under that plan.  The targeted allocation is allegedly designed to ensure equitable distribution of the company-funded retirement benefits among pilots.  Some of the longest serving pilots will not receive any benefits under the Target Plan because they have accrued close to the maximum amount of benefits possible under the frozen plan.

During the negotiations between Northwest and ALPA, thirty-six pilots filed an ERISA breach of fiduciary duty action in the United States District Court for the Western District of Washington (Seattle Litigation) seeking production of documents and information regarding the proposed pension plan changes that were then under serious consideration.  The pilots in the Seattle Litigation claimed the disclosures they sought were required under ERISA.  The Honorable Robert S. Lasnik, United States District Judge, Western District of Washington, denied the pilots' motion for a preliminary injunction.  The pilots then moved to stay the Seattle Litigation pending appeal.  In the meantime, the Target Plan was approved and implemented.

Northwest then brought the present action (Minnesota Litigation) in this Court seeking a

declaration that the Target Plan did not violate ERISA or the ADEA's age discrimination rules.

The pilots in the Seattle Litigation subsequently withdrew their motion to stay. They

were recently granted permission to amend their complaint to add affirmative claims against

Northwest regarding the legality of the plan under ERISA and the ADEA. The pilots also allege

age discrimination claims under Washington, California, and Minnesota law. Although Judge

Lasnik permitted the pilots to amend their complaint, he stayed the Seattle Litigation pending

resolution of this action. In doing so, Judge Lasnik concluded that the Seattle Litigation was not

the first-filed action regarding the legality of the Target Plan because "it did not raise any of the

claims asserted in the Minnesota action and was, for all intents and purposes, resolved by the

time the Minnesota action was filed." Judge Lasnik also concluded that the Minnesota Litigation

was not filed in anticipation of the pilots' motion to amend the complaint in the Seattle Litigation

and was not brought by Northwest for the purpose of forum shopping.

The Pilot Defendants now bring the first-filed issue before this Court seeking a transfer or

stay of the Minnesota Litigation under the first-filed rule or the exceptions to it, as set forth by

the Eighth Circuit Court of Appeals, or pursuant to 28 U.S.C. § 1404(a) (2000). In the

alternative, the Pilot Defendants request that the Court exercise its inherent power to stay this

action pending the outcome of the Seattle Litigation.

## II.      DISCUSSION

**A.      Transfer pursuant to the first-filed rule/exceptions**

The well-established rule is that in cases of concurrent jurisdiction, "the first court in

which jurisdiction attaches has priority to consider the case." *Nw. Airlines, Inc. v. Am. Airlines,*

*Inc.*, 989 F.2d 1002, 1006-07 (8th Cir. 1993) (citing *Orthmann v. Apple River Campground Inc.*,

3

765 F.2d 119, 121 (8th Cir. 1985)).  This first-filed rule "is not intended to be rigid, mechanical,

or inflexible," but is to be applied in a manner best serving the interests of justice.  *Id.*  The

prevailing standard is that "in the absence of compelling circumstances," the first-filed rule

should apply.  *Id.* (quoting  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d

1169, 1174 (11th Cir. 1982)).

The Eighth Circuit Court of Appeals has identified certain "red flags" that the district

court should consider in determining whether a departure from rigid application of the first-filed

rule is appropriate in a particular case.  *See Nw. Airlines*, 989 F.2d at 1006-07.  The first "red

flag" is whether the first filer had notice of the second filer's intention to file suit, and therefore

raced to the courthouse to be first.  *Id.* at 1007.  Here, a court looks at the relative timing of the

actions and any delay by either party to determine if the second-filed lawsuit was "not truly

contemplated" until after the first-filed action was conceived.  *Id.*  The second "red flag" is

whether the first-filed action is merely for declaratory judgment, suggesting that it is a

"preemptive strike," rather than a suit for damages or equitable relief.  *Id.*

The Pilot Defendants claim that the Seattle Litigation was the first-filed suit and that the

Western District of Washington is thus the proper venue for the second-filed declaratory

judgment action brought by Northwest.  However, this Court agrees with the well-reasoned

analysis and ultimate conclusion of Judge Lasnik that the Seattle Litigation was not the first-filed

action regarding the legality of the Target Plan.  The Seattle Litigation, as originally filed in

August 2007, sought to compel production of documents and information pursuant to

Northwest's fiduciary duties under ERISA.  On the other hand, the Minnesota Litigation, filed on

December 12, 2007, seeks a declaration that the Target Plan is not age-discriminatory.  As Judge

Lasnik pointed out, "[r]esolution of the original Seattle action would not adjudge or impact the

claims raised in Minnesota."  Allegations concerning the legality of the Target Plan were not

raised by the pilots in the Seattle Litigation until January 10, 2008.[1]  On the basis of the entire

record, the Court concludes that the Minnesota Litigation is "first" for the purposes of the first-

filed rule.

The Pilot Defendants next argue that compelling circumstances exist in this case that

warrant a departure from the first-filed rule and a transfer of the Minnesota Litigation to the

Western District of Washington.  The Pilot Defendants contend Northwest had ample notice that

they were considering age discrimination and duty of fair representation claims against

Northwest and ALPA before the Minnesota Litigation was commenced.  They further assert that

Northwest then rushed to the courthouse in Minnesota to file its declaratory judgment action in

an effort to forum shop and preempt the pilots' substantive challenges to the Target Plan in the

Seattle Litigation.

The Court disagrees.  The correspondence between the parties presented by the Pilot

Defendants in support of their assertions of ample notice merely refers to evaluation,

investigation, and consideration of potential claims regarding the Target Plan.  The July 2007

letter from the pilots' counsel in the Seattle Litigation to Northwest states that the pilots are

"currently evaluating several additional legal claims" including a breach by ALPA of its duty of

fair representation and violation of age discrimination laws by the Target Plan if implemented.

The November 2007 letter to Northwest, alleging Northwest had a legal duty to provide forty-

five days notice of an amendment to the pilots' benefits plan, concludes by stating "we do not,

by raising the notice issue, intend to state or imply that we believe the targeting plan, if

---

[1]      While the pilots' motion to amend the complaint was not filed in the Seattle Litigation
until January 23, 2008, the record indicates that a letter dated January 10, 2008, was sent to the
Court indicating the pilots' intention to seek leave to amend their complaint to add substantive
claims against Northwest and ALPA.

implemented, will be lawful rather than age discriminatory or otherwise unlawful." Finally, the

email dated December 5, 2007, which appears to have been sent to Northwest pilots through an

email "list_service," contains little more than a plea to pilots to contact their ALPA

representative to voice opposition to the pending implementation of the Target Plan and a request

to the pilots for financial assistance should litigation become necessary. The email specifically

states that litigation is an avenue of action "that may be pursued." Notwithstanding the absence

of any proof that Northwest actually received this correspondence, its contents, as well as the

contents of the July and November 2007 letters, are insufficient to convey adequate notice of a

present intent to file suit over the legality of the approved Target Plan. *See Nw. Airlines*, 989

F.2d at 1007 (refusing to disregard the first-filed rule where Northwest had notice that American

was considering filing a lawsuit, but did not know whether litigation was "imminent" or whether

American instead "was doing anything more than blowing smoke about a potential lawsuit").

The Pilot Defendants place significant reliance on two unpublished cases from this

District, but this reliance is misplaced as these cases are factually distinguishable from the

circumstances of the instant action. In both *ABC Teacher's Outlet Inc. v. School Specialty, Inc.*,

Civ. No. 07-159, 2007 WL 2122660 (D. Minn. July 17, 2007) and *ELA Medical, Inc. v.

Arrhythmia Management Associates, Inc.*, Civ. No. 06-3580, 2007 WL 892517 (D. Minn. Mar.

27, 2007), the Court departed from the first-filed rule based on clear evidence that the first filer

had notice of the second filer's intent to sue. In *ABC Teacher's Outlet*, the notice of the second

filer's intention to sue was an actual "threat to take action" and subsequent "warning about a

potential claim for enhanced damages." In *ELA Medical*, the notice was the second filer's

express rejection of an employee's attempt to terminate a contract containing a non-competition

provision where the employee entered into a similar sales contract with another company. In

both cases, the express and implied message of the second filer regarding the imminence of

litigation against the first filer is different from the mere profession of consideration and

evaluation of potential claims by the pilots in the Seattle Litigation.

Having reviewed the full chronology of events and circumstances leading up to the filing

of the Seattle Litigation and the Minnesota Litigation, the Court reaches the same conclusion

under *Northwest Airlines* as Judge Lasnik reached in the Seattle Litigation:

> It was clear from the outset of the Seattle litigation that the plaintiffs were
> concerned that the retirement plan being negotiated by Northwest and the pilot's
> union would be unfavorable to pilots with seniority.  While that concern led to
> the filing of the ERISA claim, it did not necessarily reflect an intent to challenge
> the plan as finally adopted or to assert an age discrimination claim against
> Northwest.  When the Court [in the Seattle Litigation] denied their motion for
> preliminary injunction, plaintiffs treated this action as dead and filed a motion to
> stay pending resolution of their appeal.  The motion to stay was filed a week after
> plaintiffs [the pilots] received notice that Northwest had adopted the new benefits
> plan (although they did not possess a copy of the plan at that time).  Given that
> the plaintiffs made no attempt to expand the scope of the Seattle litigation and in
> fact continued their efforts to obtain a stay in this case even after Northwest
> initiated suit in Minnesota, is it not clear when the plaintiffs actually decided to
> assert an age discrimination claim.

*Tanksley, et al., v. Nw. Airlines*, Case No. C07-1227RSL, slip op. at 3-4 (W.D. Wash. Mar. 12,

2008).

As for the second red flag identified in *Northwest Airlines*, the Pilot Defendants urge the

Court to conclude that Northwest's declaratory judgment action is a preemptive action because

(1) it was filed in Minnesota despite the existence of the Seattle Litigation and Northwest's

knowledge that the pilots in that case were very likely to file age discrimination claims in the

near future, and (2) Northwest filed its declaratory action one day after implementing the

targeting plan.  These arguments are without merit.

As already discussed, Northwest did not have notice of an intent on the part of the pilots

to file a lawsuit alleging age discrimination.  In addition, the circumstances and the sequence of

events leading up to the filing of the Minnesota Litigation do not support the conclusion that

Northwest filed this declaratory action merely as a preemptive strike.  As Judge Lasnik

succinctly indicated in his Order:

> Northwest was not under an obligation to sit quietly and wait for plaintiffs to
> make up their minds: plaintiffs [pilots] did not provide express or implied notice
> of their intention to sue, and Northwest's obligations under the new plan were to
> begin immediately.  Because it was neither unseemly nor unreasonable for
> Northwest to seek to resolve the lawfulness of the new retirement plan in the
> district where the plan was negotiated and will be implemented, none of the
> exceptions to the first-to-file rule applies.

In sum, the Court concludes that the instant action for declaratory judgment filed by

Northwest on December 12, 2007, is the first-filed action to raise claims regarding the legality of

the Target Plan.  The Court further concludes that none of the exceptions to the first-filed rule set

forth in *Northwest Airlines* applies here.  Accordingly, transfer of the Minnesota Litigation to the

Western District of Washington pursuant to these exceptions is unwarranted.

**B.      Transfer under 28 U.S.C. § 1404(a)**

The Pilot Defendants also seek a transfer of the Minnesota Litigation pursuant to 28

U.S.C. § 1404(a).  "For the convenience of the parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have

been brought." 28 U.S.C. § 1404(a) (2000).  The party seeking a transfer ordinarily bears the

burden of establishing that a transfer is warranted.  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119

F.3d 688, 695 (8th Cir. 1997).  A motion to transfer an action to another district should be denied

unless the balance of factors strongly favors the moving party.  *See Graff v. Qwest Commc'ns*

*Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).  The decision whether to transfer an action

lies within the discretion of the district court.  *Everett v. St. Ansgar Hosp.*, 974 F.2d 77, 79 (8th

Cir. 1992).

The threshold question of whether venue is proper in the Western District of Washington at Seattle is not disputed. The Court therefore turns to the second part of the analysis, whether a transfer is warranted to serve the convenience of the parties, the convenience of the witnesses and the interests of justice.

### 1.    *Convenience of the parties*

When considering the convenience of the parties, the "normal presumption [is] in favor of a plaintiff's choice of forum," especially "where the plaintiff resides in the district in which the lawsuit was filed." *Graff*, 33 F. Supp. 2d at 1121. Here, Northwest filed this action in Minnesota, the state of its headquarters. Of the approximately 4,500 Northwest pilots nationwide, over 1,000 reside in Minnesota.[2] Approximately 300 Northwest pilots reside in Washington.[3] All of the Northwest employees who participated in the design and negotiations relating to the Target Plan and those currently involved in its administration are located in Minnesota. The Court concludes that this factor does not weigh in favor of transfer.

### 2.    *Convenience of the witnesses*

The convenience of the witnesses is an important factor in the transfer analysis. *Graff*, 33 F. Supp. 2d at 1121; *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991). Considerations relevant to this factor include the number of essential nonparty witnesses, their

---

[2]    Northwest argues that five of the six pilots named as representatives of the putative defendant class reside in Minnesota. The Court gives this fact no weight as Northwest was able to hand-pick these pilots from the thirty-six plaintiffs in the Seattle Litigation. The Court also notes that it is not uncommon for airline pilots to reside in one state and be assigned to fly from a base located in another state. *See Jordan v. U.S.*, Civ. No. 04-3800, 2006 WL 752928 (D. Minn. March 23, 2006).

[3]    During oral argument, counsel for the Defendant Pilots' stated that the majority of the senior pilots who allegedly suffer discrimination under the Target Plan are located on the West Coast. Other than counsel's assertion, the Court finds no evidence in the record supporting this contention.

location, and the preference for live testimony. *Graff*, 33 F. Supp. 2d at 1121; *Nelson*, 759 F.

Supp. at 1402. This factor is not a contest between the parties as to which one presents a longer

list of witnesses located in the potential districts. *Graff*, 33 F. Supp. 2d at 1121-22; *Nelson*, 759

F. Supp. at 1402. The party seeking the transfer must clearly specify the essential witnesses to

be called and must make a general statement of what their testimony will cover. *Graff*, 33 F.

Supp. 2d at 1122; *Nelson*, 759 F. Supp. at 1402. The court must examine the materiality and

importance of the anticipated witnesses' testimony and determine whether the forum is

convenient for them. *Graff*, 33 F. Supp. 2d at 1122.

The Pilot Defendants argue that the most relevant non-party witness testimony will be

that of the ALPA witnesses, including the ALPA leadership, members of the ALPA Master

Executive Counsel (MEC), which includes the Negotiating Committee, and members of the

Retirement & Insurance Committee (R & I Committee). The Pilot Defendants contend the

location of these witnesses does not favor Minnesota. They point specifically to MEC Chairman,

David Stevens, a resident of Washington, MEC Secretary/Treasurer Mark Young, a resident of

New York and Hawaii, R & I Committee members Paul Kent, a resident of Washington, and

Bob Walker, a resident of California, and former R & I Committee member Joe Damiani, a

resident of Alaska. While the Pilot Defendants do not specifically discuss the testimony of any

one of these witnesses, they generally assert that these individuals played a central role in

developing the Target Plan and will provide testimony about negotiations with Northwest and

ALPA's fair representation of the pilots.

A broader consideration of the geographical evidence in the record reveals that the

essential non-party witnesses in this action reside in a variety of states. All of the Northwest

representatives who participated in the negotiations and adoption of the Target Plan reside in

Minnesota.  This is also true for several ALPA representatives, as the MEC maintains permanent offices in Bloomington, Minnesota, near the Minneapolis/St. Paul International Airport.  While MEC Chairman Stevens presently resides in Washington, he testified that at all relevant times during the negotiations of the Target Plan, he maintained an office in Bloomington, Minnesota, and that he currently spends most of his time working there.  He states that this is consistent with the practice of his predecessor.  Many of the ALPA witnesses who played central roles in the negotiation of the Target Plan live in states other than Minnesota, but work for ALPA in Bloomington, Minnesota, where there is dedicated office space and full-time support staff.

Although R & I Committee members Paul Kent and Bob Walker reside in Washington, the record shows that these two committee members were elected to their positions in March 2008.  Each served only as adjuncts to the R & I Committee during the negotiation of the Target Plan, making their roles during the negotiations of that plan less significant when compared to the longer-serving members of the R & I Committee.  ALPA also identifies other ALPA employees that were important in the negotiations of the Target Plan, including an ALPA attorney who lives in Wisconsin and Retirement and Insurance Department employees based in Virginia.  On this record, the Court concludes that the Pilot Defendants have not met their burden of establishing that this factor weighs in favor of transfer.

> 3.      *Interest of Justice*

The last prong of the transfer analysis addresses whether the interest of justice favors transfer.  *Nelson v. Soo Line R. R. Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999).  To the extent relevant to the facts of each case, this step typically involves considerations of judicial economy, obstacles to a fair trial, conflict of law problems, and advantages of having a local court determine local law.  *Id.*

The Pilot Defendants argue that this factor weighs in favor of transfer because Judge Lasnik has presided over the Seattle Litigation since August 2007, and he is most familiar with the parties and the underlying facts surrounding the negotiations of the Target Plan. The Court is not persuaded.[4] There is no evidence establishing that the Seattle Litigation included anything more than the original denial of the preliminary injunction and the more recent granting of the pilots' motion to amend their complaint. Northwest's assertion that no factual discovery occurred during the adjudication of these motions stands undisputed.

There is no apparent dispute that the operative facts surrounding the negotiation and approval of the Target Plan occurred in Minnesota or that all of the relevant documents and records are located in Minnesota. The parties have not raised any issues regarding obstacles to a fair trial or issues regarding any conflicts of law. Under these circumstances, the Court concludes that Northwest's selection of Minnesota as the forum for its lawsuit was reasonable and was not an exercise in forum shopping. The interests of justice do not weigh in favor of transfer.

In sum, the Court has considered the convenience of the parties, the convenience of the witnesses, and the interests of justice in examining whether transfer of this declaratory action is warranted. On the record before it, the Court concludes that it is not.

**C.   Stay of the Minnesota Litigation**

Alternatively, the Pilot Defendants urge the Court to stay this action pending resolution of the Seattle Litigation pursuant to its inherent authority and in exercise of its discretion to decide whether and when to hear claims under the Declaratory Judgment Act. *See Wilton v.*

---

[4]   The Court notes that the Pilot Defendants' position regarding Judge Lasnik's knowledge of the case here is not entirely consistent with their argument regarding the first-filed rule, in which they contend Judge Lasnik did not fully consider the entire record in determining whether Northwest had notice from the pilots in the Seattle Litigation of an actual intent to file suit.

*Seven Falls Co.*, 515 U.S. 277, 282, 288 (1995) (indicating that district courts are not obligated

to assume jurisdiction of declaratory judgment actions and may stay or dismiss such claims in

their discretion).  The undersigned declines the Pilot Defendants' invitation to do so here.

Moreover, for the reasons stated above, the Pilot Defendants' request for a stay based on the

first-filed rule and exceptions to it is also denied.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1. The Motion to Stay filed by Defendants Stephen M. Filipas, Robert F. Mokos, Thomas E. Niederer, Raymond B. Phillips, Grant D. Ranum, and Michael Tanksley, Individually, and as Representatives of Persons Similarly Situated [Docket No. 24] is STRICKEN.

2. The Motion to Transfer or Stay filed by Defendants Stephen M. Filipas, Robert F. Mokos, Thomas E. Niederer, Raymond B. Phillips, Grant D. Ranum, and Michael Tanksley, Individually, and as Representatives of Persons Similarly Situated [Docket No. 68] is DENIED.

Dated:  April 15, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge