UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northwest Airlines, Inc.,

        Plaintiff/Counterdefendant,

and

Air Line Pilots Association,

        Intervenor-Plaintiff/Counterdefendant,

v.                                                                                          Civil No. 07-4803 (JNE/JJG)
                                                                                            ORDER
Raymond B. Phillips, Michael Tanksley,
Belmont Beck, Platt Hubbell, Timothy I.
Meldahl, Gregory S. Novotny, William J.
Riley, and Ralph C. Taylor, Individually,
and as Representatives of Persons
Similarly Situated,

        Defendants/Counterclaimants.

---

Robert V. Atmore, Esq., and Marnie L. DeWall, Esq., Lindquist & Vennum, L.L.P., and Richard M. Seltzer, Esq., Thomas N. Ciantra, Esq., and Evan Hudson-Plush, Esq., Cohen, Weiss and Simon LLP, appeared on brief for Intervenor-Plaintiff/Counterdefendant Air Line Pilots Association.

Jeffrey Lewis, Esq., Bill Lann Lee, Esq., Nina Wasow, Esq., Kirsten G. Scott, Esq., and Sacha Crittenden Steinberger, Esq., Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Lawrence P. Schaefer, Esq., Benjamin Elwood, Esq., and Jill Gaulding, Esq., Schaefer Law Firm, LLC, and Seymour Mansfield, Esq., and Denise Y. Tataryn, Esq., Mansfield, Tanick & Cohen, P.A., appeared on brief for Defendants/Counterclaimants Raymond B. Phillips, Michael Tanksley, Belmont Beck, Platt Hubbell, Timothy I. Meldahl, Gregory S. Novotny, William J. Riley, and Ralph C. Taylor, Individually, and as Representatives of Persons Similarly Situated.

Northwest Airlines, Inc., did not appear.

---

        This case is before the Court on the motion of the Air Line Pilots Association (ALPA) for judgment on the pleadings or summary judgment on the sole remaining counterclaim of a defendant class of pilots (Pilots) for breach of the duty of fair representation. For the reasons set

1

forth below, the Court grants in part and denies in part ALPA's motion. In addition, the Court denies the Pilots' request for leave to amend the Amended Counterclaim.

## I.   BACKGROUND

The Court chronicled the facts of this case in an Order dated January 26, 2009, *see Northwest Airlines, Inc. v. Phillips*, 594 F. Supp. 2d 1075 (D. Minn. 2009), and therefore will not recount them in detail here. Briefly, before declaring bankruptcy on September 14, 2005, Northwest Airlines, Inc. (Northwest), provided retirement benefits to its pilots through the Northwest Airlines Pension Plan for Pilot Employees (Pension Plan). The Pilots could also contribute to a defined contribution plan, the Retirement Savings Plan (RSP). After Northwest declared bankruptcy, Northwest and ALPA froze the Pension Plan, fixing each pilot's pension benefit at a monthly amount as of January 31, 2006.

Northwest and ALPA then agreed that Northwest would provide retirement benefits for the pilots in the future by contributing a percentage of pilot earnings to the RSP on an annual basis. According to the agreement, each pilot would receive an individual contribution to his account that was proportional to his pay (pro-rata to pay). The agreement provided, however, that ALPA had the right to determine an alternate method for allocating Northwest's contribution to the pilots' accounts.

ALPA predicted that the combination of the pro-rata to pay plan and the frozen Pension Plan benefit would have resulted in the retirement benefits received by active pilots ranging from 30% to 75% of their final average earnings (FAE). One factor contributing to this disparity was that some senior pilots had already accrued approximately 60% of their FAE as a frozen Pension Plan benefit, yet would still receive RSP contributions, while less senior pilots who had not accrued close to 60% of their FAE would never reach 60% even with Northwest's contributions

to their RSP accounts. According to ALPA, this difference motivated it to propose that Northwest allocate its contributions to the RSP using a "targeting" methodology. Northwest agreed, and Northwest and ALPA implemented the Money Purchase Plan for Pilot Employees (MP3), a target benefit plan, on December 11, 2007.

Under the MP3, a "gross target benefit" is calculated for each pilot. The amount contributed to each pilot's account is based on the difference between the pilot's gross target benefit and his frozen Pension Plan benefit. A pilot whose frozen Pension Plan benefit exceeds his gross target benefit will receive no contributions under the MP3. Instead, the pilot will receive his frozen Pension Plan benefit as retirement income. A pilot whose gross target benefit exceeds his frozen Pension Plan benefit will receive contributions under the MP3, but in some cases the contributions will be lower than what the pilot would have received under the pro-rata to pay plan.

Northwest filed suit in December 2007 seeking a declaratory judgment that the MP3 complies with the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2006). ALPA intervened in January 2008. Following litigation related to venue, the Pilots asserted counterclaims against Northwest and ALPA alleging that the MP3 violates ERISA, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2006), and California, Minnesota, and Washington laws prohibiting age discrimination. The Pilots also claim that ALPA breached its duty of fair representation by negotiating and enforcing the MP3 (DFR claim). The parties stipulated that class and collective action certification was proper, and the Court granted their joint motion for certification. For purposes of the DFR claim, the named defendants/counterclaimants represent a class of Northwest pilots who are participants in the MP3, are age 40 and over, and receive no contributions under the MP3 or smaller contributions

to their MP3 accounts than under the pro-rata to pay plan.

In October 2008, Northwest and ALPA moved for judgment on the pleadings or summary judgment on their claims and on the Pilots' counterclaims. The Pilots moved for a continuance under Rule 56(f) of the Federal Rules of Civil Procedure with respect to their DFR claim and their disparate impact and disparate treatment claims under ADEA § 4(a), (c). The Court granted the continuance. In an Order dated January 26, 2009, the Court granted Northwest and ALPA summary judgment that the MP3 did not violate ADEA § 4(i)(1)(B) and ERISA § 204(b)(2)(A), that ADEA § 4(i)(4) precluded the Pilots' disparate impact and disparate treatment claims under ADEA § 4(a), (c), and that ERISA preempted the Pilots' state-law claims.

On January 29, 2009, ALPA asked the Court to set an immediate briefing schedule for ALPA's motion for judgment on the pleadings or summary judgment on the Pilots' DFR claim. The Pilots objected because the discovery they described in their Rule 56(f) motion was not yet complete. The Court ordered the parties to brief the motion as if a hearing were scheduled for April 3, 2009, and stated that a hearing would be scheduled at a later date if the Court deemed oral argument necessary. The parties have completed their briefing, and the Court has determined that oral argument is unnecessary.

## II.  DISCUSSION

ALPA's motion is captioned as a motion for judgment on the pleadings and/or summary judgment. In its opening brief, however, ALPA states that it "depends on this Court's [January 26] Order and the legal insufficiency of the counterclaim in support of the instant Motion." The Court treats ALPA's motion as one for judgment on the pleadings.

A court should grant judgment on the pleadings only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). A court evaluates a motion for judgment on the pleadings brought under Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as a motion brought under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). Although a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media*, 186 F.3d at 1079.

**A.     ALPA's Motion for Judgment on the Pleadings**

The duty of fair representation arises from an exclusive bargaining agent's statutory authority to represent all members of a bargaining unit. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The bargaining agent is obligated to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177. A union breaches its duty of fair representation if its

5

actions are either arbitrary, discriminatory, or in bad faith. *ALPA v. O'Neill*, 499 U.S. 65, 67 (1991).

Here, the Pilots make the following allegations in their Amended Counterclaim regarding their DFR claim:

> As the exclusive collective bargaining representative of the pilots employed by Northwest, ALPA owed to all Counter-Claimants and Class Members a duty to represent them fairly without discriminating against them because of their age and/or seniority. ALPA has breached its duty of fair representation to Counter-Claimants and the Class by, *inter alia*, negotiating and enforcing a cessation of contributions to the [RSP] and replacing it with the [MP3].

ALPA makes several arguments in support of its motion for judgment on the pleadings. ALPA first contends that to the extent that the DFR claim is based on alleged age discrimination, dismissal is required because the Court concluded in the January 26 Order that the MP3 does not violate the ADEA. ALPA next contends that to the extent that the DFR claim is based on alleged discrimination against senior pilots, the Pilots can succeed only if ALPA acted arbitrarily in enacting the MP3 because only discrimination based on "invidious" classifications such as race, sex, or age violates a union's duty of fair representation. Finally, ALPA contends that any DFR claim based on alleged arbitrary or bad faith conduct fails because the Pilots did not allege in their Amended Counterclaim that ALPA's decision to enact the MP3 was arbitrary or in bad faith.[1] The Court considers each argument in turn.

### 1.     Allegations of Discrimination Against Older Pilots

ALPA argues that the DFR claim, to the extent that it is based on allegations of age discrimination, necessarily fails because the Court dismissed the Pilots' ADEA claims. The Pilots respond that the duty of fair representation is not coextensive with the ADEA and that the

---

[1]     ALPA does not contend that the DFR claim, to the extent that it is based on discrimination against older and senior pilots, fails to meet the notice pleading standard set forth in *Twombly*. The Court therefore does not reach this issue.

Court's conclusion that the MP3 complies with the ADEA does not mean that ALPA's conduct was free from hostile discrimination against older pilots.

For the reasons given below, the Court concludes that ALPA has not clearly established that it is entitled to judgment as a matter of law on the DFR claim to the extent that the claim is based on alleged age discrimination. First, ALPA is not immunized from liability for a breach of the duty of fair representation based on age discrimination simply because it reached a result which it could have reached if it were not motivated by animus. *See Ramey v. Dist. 141, Int'l Assoc. of Machinists*, 378 F.3d 269, 276-77 (2d Cir. 2004) (rejecting argument that because the union's conduct was objectively reasonable, the union should be immune from suit despite the jury finding that the union was motivated by animus toward the plaintiffs); *see also Jeffreys v. Commc'ns Workers of Am.*, 354 F.3d 270, 275 (4th Cir. 2003) ("While the arbitrariness of [the union's] actions turns on the objective adequacy of the union's conduct, whether the [union] acted discriminatorily or in bad faith depends on the subjective motivation of the union's officials."). The Court's conclusion that the MP3 did not violate ADEA § 4(i)(1)(B) was based only on the structure and terms of the MP3, while the dismissal of the Pilots' claims under ADEA § 4(a), (c) was based only on the MP3's compliance with ADEA § 4(i). *Nw. Airlines*, 594 F. Supp. 2d at 1083-84, 1087-89. The Court made no determination as to ALPA's motive in enacting the MP3 in the January 26 Order. Because ALPA's motive remains undetermined, the January 26 Order does not foreclose the DFR claim.

Moreover, although ALPA characterizes the dismissal of the Pilots' ADEA claims as a finding that the MP3 is not age discriminatory, the scope of the January 26 Order is not so expansive. The Court decided the narrower issue of whether the MP3 ceased allocations or reduced the rate of allocations to the Pilots' accounts because of age, not the broader issue of

7

whether ALPA discriminated against the Pilots because of age in enacting the MP3. *Compare* 29 U.S.C. § 623(i)(1)(B) ("[I]t shall be unlawful . . . to establish or maintain an employee pension benefit plan which requires or permits . . . the cessation of allocations to an employee's account, or the reduction of the rate at which amounts are allocated to an employee's account, because of age."), *with id.* § 623(c)(1) ("It shall be unlawful for a labor organization . . . to discriminate against . . . any individual because of his age."). Nothing in the January 26 Order requires the conclusion that ALPA did not discriminate against older pilots in enacting the MP3.

ALPA cites *Bovers v. Flying Tiger Line Inc.*, 979 F.2d 291 (2d Cir. 1992), in support of its contention that dismissal of the ADEA claims requires dismissal of the DFR claim to the extent that the claim is based on alleged age discrimination. In *Bovers*, the Second Circuit first affirmed the district court's grant of summary judgment dismissing the plaintiffs' claims for intentional age discrimination under ADEA § 4(a), (c), *see* 979 F.2d at 295-98, then affirmed dismissal of the plaintiffs' duty of fair representation claim to the extent that the claim was based on alleged age discrimination because the challenged plan did not violate the ADEA, *id.* at 298. *Bovers* is unpersuasive because here, unlike in *Bovers*, the Court has made no determination as to intentional age discrimination. Finally, ALPA contends, citing *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1532 (7th Cir. 1992), that a "discriminatory motive without a discriminatory rule" cannot result in a breach of the duty of fair representation.[2] The Court has determined only that the MP3 did not cease or reduce allocations because of age, not whether the MP3 constitutes

---

[2] In its reply brief, ALPA states: "As the Court noted in dismissing the age discrimination claims, it is inexplicable that 'a plan in which discriminatory animus is made manifest . . . is possible' if the plan is non-discriminatory on its face." The observation relied on by ALPA is not pertinent because, as explained above, the Court did not conclude in the January 26 Order that the MP3 is "non-discriminatory on its face."

a discriminatory rule. The Court therefore denies ALPA's motion for judgment on the pleadings on the DFR claim to the extent that the claim is based on alleged age discrimination.

### 2. Allegations of Discrimination Against Senior Pilots

ALPA contends that the DFR claim, to the extent that it is based on alleged discrimination against senior pilots, fails because seniority is not an invidious classification. The Pilots respond that ALPA incorrectly equates "non-invidious" discrimination with discrimination against a class not otherwise protected by anti-discrimination laws and that ALPA's argument is unsupported by legal authority.

Although the Eighth Circuit has not defined invidious discrimination in the context of the duty of fair representation, other circuits have described such discrimination as based on constitutionally-protected categories or as arising from animus or prejudice. *E.g.*, *Jeffreys*, 354 F.3d at 276 ("The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice."); *Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1186 (10th Cir. 2001) ("'Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus.'") (quoting *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1359-60 (10th Cir. 1994)); *cf. Simo v. Union of Needletrades, Indus. & Textile Employees, Sw. Dist. Council*, 322 F.3d 602, 618-19 (9th Cir. 2003) (stating that limiting invidious discrimination to constitutionally-protected categories or discrimination arising from animus or prejudice is "too restrictive" and noting that a union may not discriminate on the basis of union membership). The Court concludes that invidious discrimination in the duty of fair representation context can encompass discrimination based on prejudice or animus to senior pilots.

The Eighth Circuit's decisions in *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078 (8th Cir. 1992), and *Potter v. Associated Electric Cooperative, Inc.*, 56 F.3d 961 (8th Cir. 1995), do not require a different conclusion. In *Carter*, the Eighth Circuit held that the "wide range of reasonableness" standard established by the U.S. Supreme Court in *O'Neill* "applies only to allegedly *arbitrary* union conduct." 963 F.3d at 1082. Noting that the *Carter* plaintiffs alleged discriminatory, not arbitrary, conduct, the Eighth Circuit concluded that it was error for the district court to use the "wide range of reasonableness" test when analyzing the female plaintiffs' claims of sex discrimination against their union under federal and state anti-discrimination laws. *Id.* Although the Eighth Circuit did compare the *Carter* plaintiffs' claims of sex discrimination to the allegations of discrimination against former striking pilots addressed in *O'Neill*, it did so in the context of concluding that the *Carter* plaintiffs had established a genuine issue of material fact on their sex discrimination claims. *Id.* The *Carter* court did not hold that invidious discrimination in the duty of fair representation context is limited to discrimination against constitutionally-protected classes.

The plaintiffs in *Potter*, former employees of a mine, alleged that the union breached its duty of fair representation by consenting to an agreement which "arbitrarily and discriminatorily" denied them benefits afforded to current employees. 56 F.3d at 962-63. When concluding that the union did not "discriminate arbitrarily" in *Potter*, the Eighth Circuit distinguished from *Carter* because the *Potter* plaintiffs made no claims of sex discrimination and presented no evidence refuting the union's evidence that it "did the best it could to obtain severance benefits" for the former employees. *Id.* at 965-66. The Eighth Circuit did not hold that invidious discrimination in the duty of fair representation context is limited to discrimination

10

against constitutionally-protected classes, and the Court declines to infer as much from the *Potter* court's discussion of *Carter*.

Finally, ALPA contends that seniority is a relevant and rational basis for union decisionmaking. ALPA further contends that just as ALPA can negotiate for the assignment of pilot positions based on seniority, it can rationally allocate retirement contributions based on prior benefit accruals associated with greater seniority. In making this argument, ALPA assumes that its implementation of the MP3 was a rational allocation rather than based on prejudice or animus to senior pilots. The Pilots' DFR claim challenges this assumption, and the Court declines to decide whether ALPA was motivated by animus or prejudice on ALPA's motion for judgment on the pleadings. The Court denies ALPA's motion for judgment on the pleadings on the DFR claim to the extent that the claim is based on alleged discrimination against senior pilots.

### 3. Allegations of Arbitrary or Bad Faith Conduct

ALPA contends that the Amended Counterclaim does not contain even a conclusory allegation that ALPA acted arbitrarily or in bad faith in adopting the MP3 and therefore does not meet the pleading standard set forth in *Twombly*. The Pilots respond that they have sufficiently alleged arbitrary and bad faith conduct and that the Court should not require the Amended Counterclaim to contain the "magic words" of "arbitrary" or "bad faith" to meet the notice pleading standard.

The Amended Counterclaim alleges facts relating only to discriminatory conduct. It does not allege facts suggesting that ALPA acted arbitrarily in enacting the MP3 or that the MP3 is so far outside a wide range of reasonableness as to be irrational. *See O'Neill*, 499 U.S. at 67. Similarly, the Amended Counterclaim does not allege facts suggesting that ALPA acted in bad faith by engaging in "fraud, deceitful action, or dishonest conduct." *See Baxter v. United*

11

*Paperworkers Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998). Although the Pilots contend that the Amended Counterclaim gives fair notice of a DFR claim based on arbitrary or bad faith conduct, they do not identify any specific allegation in the Amended Counterclaim supporting this contention. While the Pilots are not required to recite any "magic words" in their pleading, they are required to allege facts "plausibly suggesting" that they are entitled to relief on a DFR claim based on arbitrary or bad faith conduct and giving ALPA fair notice that they assert such a claim. *See Twombly*, 550 U.S. at 555, 557. The Amended Counterclaim fails to allege any such facts. The Court rejects the Pilots' attempt to retrofit their Amended Counterclaim in the wake of the January 26 Order dismissing the Pilots' claims under ERISA and the ADEA, and concludes that the Pilots have not stated a claim for breach of the duty of fair representation based on arbitrary or bad faith conduct.[3] The Court grants ALPA's motion for judgment on the pleadings on the DFR claim to the extent that the Pilots assert that the claim is based on arbitrary or bad faith conduct.

## B. Pilots' Request for Leave to Amend

In the alternative, the Pilots seek leave to amend their Amended Counterclaim. It appears that the Pilots seek leave to amend under the standard set forth in Rule 15(a) of the Federal Rules of Civil Procedure, which provides that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The scheduling order in this case, however, sets the deadline for amendment of the pleadings as October 1, 2008. Rule 16(b), not the more liberal standard of

---

[3] Citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the Pilots argue that there is a set of facts under which they could prevail on their DFR claim. The Supreme Court abrogated the "no set of facts" standard in *Twombly*, stating that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 550 U.S. at 563. The "no set of facts" standard does not establish "the minimum standard of adequate pleading to govern a complaint's survival" on a motion to dismiss. *Id.*

Rule 15(a), governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Rule 16(b) provides that a scheduling order may be modified only with the Court's consent and for good cause. Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). Here, the Pilots have not shown diligence in attempting to meet the scheduling order's requirements. The Court therefore denies the Pilots' request for leave to amend.[4]

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. ALPA's motion for judgment on the pleadings [Docket No. 140] is DENIED insofar as ALPA seeks dismissal of the Pilots' DFR claim to the extent that the claim is based on discrimination against older and senior pilots.

2. ALPA's motion for judgment on the pleadings [Docket No. 140] is GRANTED insofar as ALPA seeks dismissal of the Pilots' DFR claim to the extent that the Pilots assert that the claim is based on arbitrary or bad faith conduct.

3. The Pilots' request for leave to amend the Amended Counterclaim [Docket No. 211] is DENIED.

Dated: May 7, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[4] ALPA contends that the Pilots' proposed amendments are futile. In light of the Court's denial of the Pilots' request for leave to amend, the Court declines to address this issue.

13